2022 IL App (1st) 211352-U

No. 1-21-1352

Order filed December 21, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| ANDREW J. FILIPOWSKI, LARRY J. FREEDMAN, MICHAEL CULLINANE, PAUL HUMENANSKY, PAUL TATRO, and ANDREW WRIGHT,          ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants,          ) ) | |
| v.          ) ) | No. 14 CH 20819 |
| MORGAN, LEWIS & BOCKIUS, LLP,          ) ) ) | Honorable Eve M. Reilly, Judge Presiding. |
| Defendant-Appellant.          ) | |

JUSTICE BURKE delivered the judgment of the court.
Justices McBride and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the judgment of the circuit court granting defendant's motion for summary judgment. We reject plaintiffs' contention that the court erred in finding that their claims were time-barred and we find that plaintiffs failed to demonstrate that defendant fraudulently concealed the cause of action to toll the running of the limitations period.

¶ 2    This case arises following the circuit court's grant of summary judgment in favor of

defendant Morgan, Lewis & Bockius, LLP on the claims of plaintiffs, Andrew J. Filipowski, Larry

J. Freedman, Michael Cullinane, Paul Humenansky, Paul Tatro, and Andrew Wright, for conspiracy and aiding and abetting. Plaintiffs' claims were based on a nationwide tax fraud scheme conducted by accounting firm BDO Seidman, LLP (n/k/a BDO USA, LLP) ("BDO") in the early 2000s. BDO marketed a tax shelter strategy directed at high-income clients, like plaintiffs. At the time BDO executives were marketing and implementing the tax scheme, however, the tax executives knew that the strategy was likely illegal. Plaintiffs purchased these tax solutions from BDO in 1999. In the following years, plaintiffs were investigated by the IRS and suffered various losses based on their reliance on BDO's illegal tax strategy. BDO was also investigated by the Internal Revenue Service ("IRS") and the United States Department of Justice ("DOJ"), and several BDO executives were indicted for their role in the tax scheme.

¶ 3     Plaintiffs alleged that while BDO was marketing and implementing this illegal tax strategy, BDO executives retained defendant to provide them with a falsified legal "opinion" that the tax shelters were valid and that BDO executives would not be subject to civil or criminal liability for implementing the tax solutions. Plaintiffs maintained that from the outset defendant knew that BDO's tax scheme was illegal and could subject BDO executives to criminal liability. Plaintiffs alleged that defendant also knew that BDO clients, like plaintiffs, could suffer injuries. Plaintiffs contended that defendant nonetheless continued to aid BDO in providing legal cover for its executives and failed to inform plaintiffs of the likely illegal nature of their transactions.

¶ 4     Plaintiffs filed suit against defendant in December 2014 alleging that defendant aided and abetted BDO's breach of fiduciary duty, and that defendant and BDO conspired to conceal the criminal and fraudulent actions of BDO executives. Defendant filed a motion for summary judgment contending that plaintiffs' claims were time-barred by the statute of limitations and the statute of repose because the complained-of conduct occurred more than a decade before plaintiffs

filed their complaint. Plaintiffs responded that the limitations period should be tolled because defendant fraudulently concealed plaintiffs' cause of action. The circuit court granted defendant's motion finding that plaintiffs knew or should have known of their cause of action in 2005 or 2006, but waited until December 2014 to file this complaint, and that defendant did not fraudulently conceal the cause of action such that the limitations period could be tolled. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 5                                I. BACKGROUND

¶ 6                            A. Plaintiffs' Complaint

¶ 7     On December 30, 2014, plaintiffs filed their complaint, and subsequently filed an amended complaint. In their amended complaint, plaintiffs alleged that defendant knowingly aided, abetted, and conspired with BDO partners who engaged in a criminal fraud scheme with BDO's tax planning business. Plaintiffs contended that BDO retained defendants to advise them concerning their exposure to criminal liability as a result of a tax strategy BDO marketed to clients, including plaintiffs. In 1999, BDO's Tax Solutions Group sold plaintiffs the "Sentinel Transaction," which was a type of tax shelter. In 2000, BDO issued tax opinion letters to plaintiffs confirming the legitimacy of the Sentinel Transaction. Plaintiffs maintain that at the time BDO issued these letters, BDO and the Tax Solutions Group knew the Sentinel Transaction was an illegal tax shelter scheme. In October 2000, BDO prepared 1999 tax returns for each plaintiff, which claimed losses based on the use of the Sentinel Transaction.

¶ 8     Plaintiffs contended that in February 2000, BDO executives contacted defendant to investigate BDO's tax solutions "and to provide some sort of cover to use to minimize or eliminate their civil and criminal exposure when the IRS and clients eventually learned what BDO was doing." Plaintiffs asserted that while investigating BDO's potential liability, defendant concealed

the truth by conferring only with select BDO executives. Plaintiffs maintained that defendant quickly discovered that BDO's Sentinel Transaction would likely be disallowed and expose clients to tax penalties. Nonetheless, defendant did not inform BDO leadership of this finding, and instead drafted a "legal opinion" with a "pre-determined conclusion of 'no guilt'—in an attempt to whitewash the Tax Solutions Group Partners' actions regarding the Sentinel Transaction." Plaintiffs contended that defendant's wrongful conduct exposed plaintiffs to liability for back taxes, penalties, interest, and associated fees and costs, as well as substantial legal fees.

¶ 9    The IRS, a United States Senate subcommittee, and the DOJ all began investigating BDO in the early 2000s. In December 2000, the IRS notified BDO that it was investigating BDO's promotion of tax shelters like the Sentinel Transaction. In 2002, the IRS issued audit notices to each plaintiff with respect to their 1999 tax returns prepared by BDO. The IRS also notified each plaintiff that it had disallowed the losses that were created as part of the Sentinel Transaction, resulting in an increase in the 1999 taxes for each plaintiff, as well as potential penalties. In 2002 and 2003, the IRS commenced two different investigations of BDO's tax shelter activities, including the Sentinel Transaction.

¶ 10    Plaintiffs asserted that they did not know that BDO knew its "tax solutions" were illegal until BDO's partners were indicted and began pleading guilty in 2009. On December 30, 2009, BDO brought suit against defendant for, among other things, breach of fiduciary duty and fraud. Plaintiffs contended that it was at this point that they first learned of defendant's role in BDO's tax scheme.

¶ 11    Plaintiffs raised two claims in their complaint. The first count was for aiding and abetting a breach of fiduciary duty. In this count, plaintiffs alleged that BDO owed them a fiduciary duty as their accountant and trusted advisor. Plaintiffs contended that defendant was aware of BDO's

fiduciary duties to plaintiffs, and knew that BDO was violating these duties. Plaintiffs maintained that defendant knew that BDO was marketing the Sentinel Transaction to clients at the time they were advising BDO executives regarding their exposure to criminal liability with respect to the Sentinel Transaction. Plaintiffs further alleged that defendant helped BDO "cloak[] the Sentinel Transaction in particular and BDO's tax shelter practice in general with an aura of legitimacy," which allowed BDO executives to continue to market and implement the Sentinel Transaction and other similar transactions. Plaintiffs contended that defendant benefitted from this arrangement by collecting substantial fees from BDO. Plaintiffs maintained that defendant could have avoided liability if it had not given misleading advice to BDO executives regarding the legitimacy of the Sentinel Transaction or if it had disclosed the illegal and fraudulent nature of BDO's tax shelter practice to other BDO executives who were not part of the Tax Solutions Group. Plaintiffs asserted that defendant's failure to do so caused injury to plaintiffs and other BDO clients.

¶ 12     In their second count, plaintiffs raised a claim for conspiracy. Similar to their first count, plaintiffs alleged that defendant knowingly concealed criminal and fraudulent acts by BDO executives. Plaintiffs contended that if defendant had revealed the liabilities arising from BDO's tax practices to BDO's board of directors, BDO would have stopped marketing and implementing the illegal transactions, and would have notified BDO clients, including plaintiffs.

¶ 13                              B. Defendant's Motion to Dismiss

¶ 14     Defendant filed a motion to dismiss plaintiffs' complaint pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014)). In its motion, defendant contended that plaintiffs' claims should be dismissed because they were barred by the six-year statute of repose under section 13-214.3(c) of the Code (735 ILCS 5/13-214.3(c) (West 2014)). That section provides that any "action for damages based on tort, contract, or otherwise (i) against

an attorney arising out of an act or omission in the performance of professional services" must be commenced within six years after the date on which the act or omission occurred. 735 ILCS 5/13-214.3(b), (c) (West 2014). Defendant contended that, in their complaint, plaintiffs alleged that defendant rendered legal advice to BDO in 2000. Defendant asserted that plaintiffs were therefore required to file their lawsuit against defendant by 2006. Defendant maintained that plaintiffs' claims were therefore time-barred where plaintiffs initiated this lawsuit in 2014.

¶ 15 Defendant further contended that plaintiffs' claims were also barred by the two-year statute of limitations of section 13-213.3(b) of the Code. 735 ILCS 5/13-214.3(b) (West 2014). That section provides that an action against an attorney must be commenced within two years from the time the person bringing the action knew or reasonably should have known of the injury for which the damages are sought. *Id.* Defendant contended that plaintiffs were put on notice that BDO's tax products were problematic in 2000, and plaintiffs admitted that in 2009 they knew BDO had filed a lawsuit against defendant. Defendant maintained that plaintiffs' claims were therefore time-barred.

¶ 16                               1. *Plaintiffs' Second Amended Compliant*

¶ 17 Plaintiffs subsequently filed a second amended complaint. The second amended complaint largely maintained the facts and allegations from plaintiffs' previous complaints, but added allegations to address the arguments made in defendant's motion to dismiss. Plaintiffs alleged that they could not have reasonably discovered defendant's role is BDO's unlawful conduct until 2012 at the earliest. Plaintiffs contended that in December 2009, new BDO executives caused BDO to file suit against defendants in the superior court of the District of Columbia. The suit was based on, among other things, defendant's concealment of the liabilities for the Tax Solutions Group. Plaintiffs asserted that in June 2012, the superior court entered an order of summary judgment in

favor of defendant finding that BDO " 'knew' " of defendant's "true views concerning criminal exposure" from BDO's tax business before 2007, and that BDO's claims were therefore time-barred. Plaintiffs contended that: "In fact, none of the plaintiffs knew, or could reasonably discover, [defendant's] role in BDO's now-admitted 'unlawful and fraudulent' conduct until sometime in 2012 at the earliest."

¶ 18    Plaintiffs also alleged that the statute of repose and statute of limitations under section 13-214.3 should not apply because defendant's advice to BDO did not constitute "legal advice or professional services" under that section. Plaintiffs contended that defendant's assistance in furthering BDO's criminal and fraudulent enterprise could not be considered the provision of legal services. Plaintiffs also alleged that defendant participated in efforts to "fraudulently conceal" its "true views" from other BDO executives, the government, and BDO clients.

¶ 19              2. *Defendant's Motion to Dismiss the Second Amended Complaint*

¶ 20    Defendant filed a motion to dismiss plaintiffs' second-amended complaint. Defendant again asserted that plaintiffs' claims were barred by both the six-year statute of repose and the two-year statute of limitations under section 13-214.3 (735 ILCS 5/13-214.3(b), (c) (West 2014)). Defendant contended that plaintiffs' claims that defendant was not rendering professional services to BDO did not have any basis in law. Defendant maintained that by plaintiffs' own admissions, defendant performed substantial legal services for BDO, including performing a risk analysis for the Sentinel Transaction and drafting a written opinion concerning potential criminal liability for BDO executives. Defendant asserted that the nature of the services provided determines whether the services were legal services, and the services defendant provided to BDO were, by their very nature, legal services.

¶ 21 Defendant therefore contended that plaintiffs' claims were extinguished by the six-year statute of repose. Defendant maintained that the events giving rise to plaintiffs' claims occurred in 2000, or at the latest in 2003. Defendant asserted that therefore when plaintiffs filed their complaint in December 2014, their claims were time-barred. Defendants also contended that plaintiffs' claims were barred by the two-year statute of limitations. Defendants maintained that by plaintiffs' own admissions, they discovered defendant's role in BDO's fraud scheme at the latest in December 2009 when BDO filed suit against defendant alleging claims of legal malpractice. Defendant asserted that at a minimum this filing put plaintiffs on notice that their injuries may have been wrongly caused by defendant.

¶ 22 Defendant also contended that plaintiffs had failed to sufficiently plead a claim for fraudulent concealment to toll the statute of limitations or statute of repose. Defendant asserted that plaintiffs could not allege that a fiduciary duty existed between them and defendant, and therefore defendant had no duty to disclose anything to plaintiffs. Defendant stated that plaintiffs were "complete strangers" and defendant did not owe them a duty of care. Defendant also maintained that plaintiffs failed to plead any affirmative acts by defendant that were designed to prevent plaintiffs' discovery of their cause of action.

¶ 23 Finally, defendant contended that plaintiffs' complaint should be dismissed pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)) because plaintiffs failed to adequately state a claim for civil conspiracy or aiding and abetting.

¶ 24             3. *Plaintiffs' Response to the Motion to Dismiss*

¶ 25 In response, plaintiffs contended that their claims should not be dismissed under section 13-214.3 because defendant's participation in and assistance of an " 'unlawful and fraudulent' " criminal conspiracy was not the provision of " 'professional services.' " Plaintiffs maintained that

section 13-214.3 was therefore inapplicable. Plaintiffs also contended that they adequately pled fraudulent concealment. Plaintiffs asserted that BDO made numerous fraudulent misrepresentations to plaintiffs and BDO owed a fiduciary duty to plaintiffs. Plaintiffs contended defendant was liable for BDO's fraudulent concealment because they participated in or aided and abetted the fraudulent concealment.

¶ 26    Plaintiffs maintained that because section 13-214.3 was inapplicable, and because plaintiffs adequately alleged fraudulent concealment, the time limitation of section 13-215 would apply to their claims. See 735 ILCS 5/13-215 (West 2014). Under that section, plaintiffs asserted that they had five years from the "discovery" of their claims to bring the cause of action. Plaintiffs alleged that they discovered their claims on December 30, 2009, when BDO brought its suit against defendant. Plaintiffs maintained that this action, filed on December 30, 2014, was therefore timely.

¶ 27    Finally, plaintiffs contended that they adequately stated claims for aiding and abetting and civil conspiracy.

¶ 28                    4. *The Trial Court's Ruling on the Motion to Dismiss*

¶ 29    Following a hearing, the court denied defendant's motion to dismiss. The court first rejected plaintiffs' contention that the limitations period of section 13-215 should apply, and found that the limitation periods under section 13-214.3 applied. The court relied on the supreme court's ruling in *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271 and this court's ruling in *Ritchie Capital Management, LLC v. Fredrickson & Byron, PA*, 2015 IL App (1st) 142067-U (unpublished order under supreme court rule 23) in finding that the attorney statute of limitations of section 13-214.3 applied to a wide variety of actions, including those brought by non-clients. The court found, however, that plaintiffs had adequately alleged fraudulent concealment in the complaint and adequately stated causes of action for conspiracy and aiding and abetting. The court stated that it

was uncertain whether plaintiffs' claims would ultimately be successful, but found that there were "factual issues that can't be decided on a motion to dismiss." The court therefore denied defendant's motion to dismiss the complaint.

¶ 30                              C. Defendant's Affirmative Defenses

¶ 31    Defendant also filed an answer and raised numerous affirmative defenses to plaintiffs' complaint. As relevant here, defendant alleged that plaintiffs' claims were barred by the doctrine of *in pari delicto*, that the statute of repose and the statute of limitations barred plaintiffs' claims and there was no fraudulent concealment by defendant, and that plaintiffs' claims were barred by contracts or agreements they entered into with BDO.

¶ 32                          D. Defendant's Motion for Summary Judgment

¶ 33    Defendant subsequently moved for summary judgment on those three affirmative defenses. In its motion, defendant noted that the court had previously found in denying defendant's motion to dismiss that the applicable limitations periods for plaintiffs' claims were the statute of repose and statute of limitations in section 13-214.3(b), (c). Defendant alleged that it did "limited legal work" for BDO in 2000, and thus plaintiffs' claims, filed 14 years later, were time-barred by that section. Defendant further contended that plaintiffs' allegations of fraudulent concealment were flawed because plaintiffs admitted that defendant was a "complete stranger" to them and therefore defendant could not have concealed anything from them. Defendant maintained that fraudulent concealment was also inapplicable because plaintiffs should have known that their tax shelters were invalid before the limitations period expired in 2006. Defendant noted that plaintiffs had ample evidence that BDO's tax shelter business was under investigation by the United States government in the early 2000s, and three plaintiffs even entered into settlement agreements with BDO in 2005. Defendant further noted that fraudulent concealment extends the time for a party to

file suit by five years after the discovery of the concealed cause of action. Defendant asserted that plaintiffs "discovered" the alleged fraudulent concealment by BDO before December 30, 2009, based on their numerous correspondences with BDO and the ongoing investigation of BDO by the federal government.

¶ 34     Defendant also contended that plaintiffs' claims were barred by the settlement agreements that they entered into with BDO. Defendant alleged that these settlement agreements purported to release all of plaintiffs' claims against BDO and all of plaintiffs' claims against BDO's agents or counsel, which included defendant. Finally, defendant asserted that plaintiffs' claims were barred by the doctrine of *in pari delicto* because plaintiffs knew the tax shelters were shams when they entered into the transactions.

¶ 35                    1. *Plaintiffs' Response to the Motion for Summary Judgment*

¶ 36     Plaintiffs initially filed affidavits pursuant to Supreme Court Rule 191(b) (eff. Jan. 4, 2013) in response to defendant's motion for summary judgment. However, the court struck plaintiffs' affidavits and ordered them to file a response to defendant's motion. In their response, plaintiffs contended that their claims were timely filed because BDO and defendant fraudulently concealed the illegal nature of BDO's tax shelter transactions until at least December 30, 2009. Plaintiffs asserted that BDO made numerous misrepresentations to plaintiffs including that the Sentinel Transaction was valid and legal and that the IRS notices did not apply to plaintiffs' transactions. Plaintiffs further contended that BDO, who owed plaintiffs a fiduciary duty, failed to disclose material facts to plaintiffs including that BDO executives had knowingly created, marketed, and implemented illegal tax shelters as part of a criminal conspiracy. Plaintiffs alleged that defendant participated in and assisted BDO's fraudulent concealment by, *inter alia*, drafting false and misleading communications that were sent to BDO's clients, including plaintiffs, providing BDO

executives with a legal opinion that falsely claimed that BDO's tax shelters did not create criminal liability for BDO and its executives, and concealing material documents from the IRS. Plaintiffs further asserted that defendant's actions violated the Rules of Professional Conduct for attorneys.

¶ 37    Plaintiffs maintained that they could not have learned of defendant's identity until December 30, 2009, when BDO filed suit against defendant, which was the "first public disclosure of [defendant's] identity as a participant in BDO's illegal and fraudulent tax shelters." Plaintiffs further contended that the IRS notices and legal proceedings against BDO did not demonstrate that plaintiffs discovered or could have discovered their claims against defendant sooner. Plaintiffs asserted that these factors may have been relevant to their claims against BDO, but had no bearing on any potential claims they could have against defendant who was unknown to them at the time.

¶ 38    Plaintiffs further contended that their settlement agreement with BDO did not also release defendant from liability because releases are construed to include only claims contemplated by the parties to the release and defendant was not specifically identified in the release. Finally, plaintiffs asserted that their claims were not barred by the doctrine of *in pari delicto* because defendant's superior knowledge and direct participation in the criminal conspiracy meant the parties were not equally at fault.

¶ 39         2. *The Trial Court's Ruling on the Motion for Summary Judgment*

¶ 40    Following a hearing, the court denied defendant's motion with regard to defendant's claim that plaintiffs' settlement agreement with BDO also released defendant from liability and with regard to defendant's claim that *in pari delicto* barred plaintiffs' claims. The court stated, however, that it was going to take the statute of limitations issue under advisement.

¶ 41    The court subsequently issued its ruling in an oral order, which it supplemented with a written judgment order. In its order, the court found that defendant did not make any

misrepresentations to plaintiffs with the intent to deceive them. The court observed that there was no fiduciary relationship between defendant and plaintiffs that would require them to speak. The court noted that there was a fiduciary relationship between plaintiffs and BDO, and plaintiffs' claims were based on defendant's participation in, and aiding of, BDO's breach of duty and criminal tax scheme. The court stated, however, "you cannot aid somebody in concealing that to which is known." The court found that plaintiffs were aware of the sham nature of their tax shelters, by their own admissions, sometime between 2002 and 2006, but certainly by the time they received notice from the IRS in 2006.[1] The court observed that several plaintiffs settled with BDO in 2005. The court found that even if plaintiffs were not aware of defendant's existence at this time, they still had the responsibility to conduct inquiry based on the circumstances known to them at the time.

¶ 42     The court further stated that fraudulent concealment applies only to fraudulent concealment of the cause of action, but does not apply to concealment of the identity of the tortfeasor. Relying on this court's ruling in *Pratt v. Sears Roebuck & Co.*, 71 Ill. App. 3d 825 (1979), the court found that when the tortfeasor fraudulently conceals the identity of the tortfeasor, the tortfeasor does not conceal the fact that the plaintiff suffered an injury, and therefore does not allow the plaintiff an extension of the limitations period.

¶ 43     The court continued that even if fraudulent concealment applied, it would toll the statute of limitations only until 2011, but plaintiffs did not file suit until 2014. The court therefore found that plaintiffs' claims were time-barred. This appeal follows.

---

[1]The court appeared to be referring to the IRS notices that plaintiffs received in 2005, which are discussed in more detail below.

¶ 44                                      II. ANALYSIS

¶ 45     On appeal, plaintiffs contend that the court erred in finding that their claims were barred by the statute of limitations and the statute of repose and in granting defendant's motion for summary judgment. Plaintiffs contend that the statute of limitations and statute of repose in section 13-214.3 apply only to the performance of professional services. Plaintiffs maintain that defendant's role in aiding and abetting BDO's criminal tax scheme could not be considered the performance of professional services. Plaintiffs assert that therefore the five-year "catch-all" statute of limitations of section 13-205 of the Code (735 ILCS 5/13-205 (West 2014)) should apply to their claims, rather than the limitations periods in section 13-214.3.

¶ 46     Plaintiffs further contend that even if the limitations periods in section 13-214.3 apply, defendant's fraudulent concealment of plaintiffs' cause of action tolls the limitations periods. Plaintiffs maintain that defendant's identity and role in BDO's criminal tax scheme was "unknowable" until BDO filed suit against defendant in December 2009. Plaintiffs contend that despite the circuit court's finding to the contrary, the IRS notices and federal government investigation of BDO in 2005 and 2006 did not put them on inquiry notice of their claims against defendant because these matters solely concerned BDO and did not mention defendant.

¶ 47                                   A. Summary Judgment

¶ 48     Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file, when viewed in a light most favorable to the nonmoving party, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284 (2002) (citing 735 ILCS 5/2-1005(c) (West 2000)). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and

liberally in favor of the opponent." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993). "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). We review the trial court's grant of summary judgment *de novo*. *Lacey*, 199 Ill. 2d at 284.

¶ 49                    B. Performance of Professional Services

¶ 50    We must first determine whether the services defendant rendered on BDO's behalf in 2000 constitute the performance of professional services. Section 13-214.3 provides, in pertinent part, that "[a]n action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the *performance of professional services*" must be commenced within two years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought. (Emphasis added.) 735  ILCS 5/13-214.3(b) (West 2014). Plaintiffs maintain that this section should not apply in this case because defendant's conduct should not be characterized as the performance of professional services. Plaintiffs contend that the record shows that defendant was not acting as a provider of legal services, but was instead an active participant in a criminal tax fraud scheme. Plaintiffs assert that under these circumstances the five-year limitation period of section 13-205 should apply.

¶ 51    Here, the record shows that plaintiffs' claims against defendant are clearly based on actions or omissions that arose out of defendant's performance of professional services for BDO. Our supreme court has instructed that we should interpret the terms of section 13-214.3 "broadly." *Riseborough*, 2014 IL 114271, ¶ 23. As such, this court has found that the two-year statutory limitation of section 13-214.3(b) applies even where a plaintiff alleges that an attorney aided and abetted a third party's breach of fiduciary duty. See *Janousek v. Katten Muchin Rosenman LLP*,

2015 IL App (1st) 142989. By plaintiffs' own admissions, BDO executives retained defendant to evaluate the legality of its tax shelter business, particularly the Sentinel Transaction, which it had marketed to plaintiffs and other clients. BDO executives desired an opinion from defendant regarding whether BDO could face criminal or civil liability for having marketed and implemented the transactions. Defendant also drafted correspondences to BDO clients on BDO's behalf and defendant represented BDO in proceedings with the IRS. These undertakings clearly constitute the provision of professional services.

¶ 52    We find this court's ruling in *Shrock v. Ungaretti & Harris Ltd.*, 2019 IL App (1st) 181698 instructive. In *Shrock*, the plaintiff sued the defendant law firm and two of its attorneys for aiding and abetting one of the firm's clients in violating an injunction the plaintiff had obtained against the client. *Id.* ¶ 1. The circumstances giving rise to the plaintiff's claims were known to plaintiff on November 7, 2014, but the plaintiff did not file his complaint against the law firm until November 18, 2016. *Id.* ¶¶ 38, 40. The circuit court granted the law firm's motion to dismiss the complaint finding that it was barred by the two-year statute of limitations of section 13-214.3. *Id.* ¶¶ 41-42.

¶ 53    On appeal, the plaintiff contended, *inter alia*, that section 13-214.3(b) did not apply because the defendant's "acts or omissions" were tortious, and were not " 'professional services' " that the law firm was " 'reasonably expected to perform.' " *Id.* ¶ 46. The plaintiff asserted that the law firm's acts or omissions included making false representations to the court and the plaintiff. *Id.* This court, relying on *Riseborough*, found that the statute of limitations of section 13-214.3(b) applied regardless of whether the plaintiff styled the allegations as malpractice or fraud or conspiracy because the complained-of conduct arose out of the defendants' performance of their professional services. *Id.* ¶ 48.

¶ 54    Likewise, federal courts analyzing this statute have found that section 13-214.3(b) "applies where law firms are alleged to have aided and abetted their client's malfeasance" and "where law firms are alleged to have acted fraudulently." *D.A.N. Joint Venture III, L.P. v. Touris*, 2020 WL 1445623 at 4 (N.D. Ill. 2020) (citing *Schrock*, 2019 IL App (1st) 181698); *Salon Grp., Inc. v. Salberg*, 2002 WL 1058120, at 2 (N.D. Ill. 2002) (claim based on law firm's submission of allegedly fraudulent applications for visas was subject to two-year limitation under section 13-214.3(b))); see also *Kroll v. Cozen O'Connor*, 2020 WL 919005, at 4 (N.D. Ill. 2020) (claims against law firm for malpractice, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and fraudulent concealment were subject to two-year limitation under section 13-214.3(b)). Simply put, BDO retained defendant law firm in its capacity as a law firm. Defendant's attorneys performed work for BDO executives in their capacity as attorneys. Plaintiffs may not circumvent the time limitations of section 13-214.3 simply by stylizing their claims as fraud or conspiracy where those claims clearly concern the legal work performed by defendant on behalf of BDO. *Schrock*, 2019 IL App (1st) 181698, ¶ 48. Accordingly, we find that the limitations periods under section 13-214.3(b) govern plaintiffs' claims against defendant here.

¶ 55                    C. Statute of Limitations and Statute of Repose

¶ 56    Having found that plaintiffs' claims concern the performance of professional service, we must next determine whether plaintiffs' claims are time-barred by either the two-year statute of limitations or the six-year statute of repose of section 13-214.3. 735 ILCS 5/13-214.3(b), (c) (West 2014).

¶ 57    A statute of repose and a statute of limitations are separate statutes that place a limitation on the time in which a plaintiff has to file his lawsuit. *Wisniewski v. Diocese of Belleville*, 406 Ill. App. 3d 1119, 1150 (2011)). "The purpose of a statute of limitation is to discourage the

presentation of stale claims and to encourage diligence in the bringing of actions." *Sundance Homes, Inc. v. County of DuPage*, 195 Ill. 2d 257, 265-66 (2001). Generally, a limitations period begins to run when facts exist that authorize one party to maintain an action against another, *i.e.*, when the cause of action accrues. *Id.* at 266; *Wisniewski*, 406 Ill. App. 3d at 1150. A statute of repose, as distinguished from a statute of limitations, extinguishes a cause of action after a fixed period of time, regardless of when the action accrued. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 61 (2006). A statute of repose is intended to terminate liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his or her cause of action. *Id.*

¶ 58    We observe that plaintiffs do not contend before this court, that their claims were filed within either the two-year or six-year limitations periods of section 13-214.3. Rather, they contend that the limitations periods were tolled by BDO and defendant's fraudulent concealment of their cause of action. Accordingly, we will address whether plaintiffs' claims are not time-barred because fraudulent concealment tolled the limitations periods.

¶ 59                          E. Fraudulent Concealment

¶ 60    Section 13-215 of the Code provides: "[i]f a person liable to an action *fraudulently conceals* the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." (Emphasis added.) 735 ILCS 5/13-215 (West 2014). In order to prove a claim for fraudulent concealment, the plaintiff must show:

> "(1) concealment of a material fact, (2) intent to induce a false belief where there exists a duty to speak, (3) that the other party could not have discovered the truth through reasonable inquiry and relied upon the silence as an indication that the concealed fact did not exist, (4) that the other party would have acted differently had it known of the concealed

information, and (5) that its reliance resulted in its injury." *Ashby v. Pinnow*, 2020 IL App (2d) 190765, ¶ 34 (citing *Vandenberg v. Brunswick Corp.*, 2017 IL App (1st) 170181, ¶ 31).

Plaintiffs' claim of fraudulent concealment thus raises two questions for this court. First, whether, as plaintiffs maintain, defendant fraudulently concealed plaintiffs' cause of action such that the limitations period should be tolled. Second, if defendant did fraudulently conceal the cause of action, whether plaintiffs knew or should have known of their cause of action within the limitations period despite the fraudulent concealment. We will address each of these questions in turn.

¶ 61          A. Whether Defendant Fraudulently Concealed the Cause of Action

¶ 62    Plaintiffs contend that the record shows that BDO made numerous misrepresentations to plaintiffs that delayed plaintiffs' ability to discover their cause of action against defendant. Plaintiffs maintain that these misrepresentations can be imputed to defendant as a coconspirator in BDO's scheme. Plaintiffs assert that defendant actively participated in BDO's fraudulent concealment by providing BDO executives with knowingly false legal opinions to use as cover for BDO, drafting misleading communications to BDO clients, and concealing relevant material from the federal government during the government's investigation of BDO.

¶ 63    We must first address whether BDO's alleged fraudulent concealment can be imputed to defendant. Plaintiffs acknowledge that defendant had limited, if any, contact with plaintiffs prior to this lawsuit, and therefore could not have made any representations to plaintiffs in order to prevent them from discovering their cause of action. Plaintiffs also acknowledge that no "special relationship" existed between defendant and plaintiffs such that defendant's mere silence would be sufficient to toll the limitations period. See *Wisniewski*, 406 Ill. App. 3d at 1154 (explaining that there is an exception to the general rule that mere silence on the part of the defendant does not

amount to fraudulent concealment where there is a "fiduciary or trust or other confidential relationship between" the parties.).

¶ 64    In support of their contention that defendant is liable for BDO's fraudulent concealment, plaintiffs chiefly rely on the supreme court's ruling in *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555 (1980). In *Kenroy*, the plaintiff Chicago Park District sought to acquire a parcel of land through eminent domain. *Id.* at 558. In response to a petition filed by the defendants, the Chicago City Council rezoned the property, driving up the compensation for the taking of the property. *Id.* at 558-59. Throughout the eminent domain proceeding and settlement negotiations, the defendants represented that the property had been properly rezoned. *Id.* at 559. However, two officers of the defendant later testified that the rezoning had been secured by means of bribery and fraud, including paying a city alderman $50,000. *Id.* The Park District sought damages based on the improper rezoning, and one of the issues on appeal to the supreme court was whether the Park District's complaint was barred by the applicable statute of limitations. *Id.* at 560.

¶ 65    In addressing the statute of limitations, the supreme court considered whether the Park District's cause of action had been tolled by the defendants' fraudulent concealment of the cause of action. *Id.* at 561. The court noted that the alderman who accepted the bribe, who was not a defendant in the case, owed a fiduciary duty to the Park District. *Id.* The court recognized that fraudulent concealment by a person other than the defendant will not generally serve to toll the statute of limitations. *Id.* at 563. However, the court found that the alderman was in privity with the defendants, such that their knowledge or approval of the concealment would be sufficient to toll the limitations period. *Id.* at 563-54. The court found that the defendants "intentionally and deliberately induced" the alderman's breach of fiduciary duty through bribery. *Id.* at 564. The court also found that the defendants actively participated in the fraudulent concealment by making

misrepresentations to municipal agencies and departments. *Id.* The court concluded that the defendants were therefore "in no better position than [the alderman] to use the statute of limitations to protect their allegedly ill-gotten gains." *Id.*

¶ 66    Here, there is no suggestion that defendant induced BDO's breach of fiduciary duty. Rather, by plaintiffs' allegations, BDO retained defendant in order to help provide cover for BDO's alleged ongoing breach of fiduciary duty. Plaintiffs do suggest, however, that defendant actively participated in BDO's fraudulent concealment as part of a conspiracy between the parties. The court in *Kenroy* found that the plaintiff had sufficiently alleged "the existence of an agency relationship, privity, or even an actual conspiracy" between the defendants and the alderman. *Id.* Under those circumstances, the court found that the alderman's fraudulent concealment as a fiduciary could be imputed to the defendants.

¶ 67    Here, plaintiffs likewise allege a conspiracy between defendant and BDO. It is unclear, however, if *Kenroy* only applies to the narrow circumstances where a third party *induces* another's breach of fiduciary duty. Plaintiffs do not allege that defendant induced BDO's breach of fiduciary duty. Indeed, based on plaintiffs' allegations, BDO seemed to be the driving force behind the conspiracy and its own breach of fiduciary duty, with defendant merely a participant in the conspiracy. We find, however, that in this case it is unnecessary for us to resolve the extent of the holding in *Kenroy*. As discussed below, even assuming each misrepresentation made by BDO may be imputed to defendant, plaintiffs' claims are nonetheless time-barred by section 13-214.3 because the record shows that plaintiffs should have discovered their cause of action against defendant through the exercise of ordinary diligence well before December 30, 2009.

¶ 68                           B. Whether Plaintiffs Should Have
                              Discovered Their Cause of Action Before
                              December 30, 2009

¶ 69    Plaintiffs maintain that the earliest they could have discovered their cause of action against defendant was on December 30, 2009, when BDO filed suit against defendant and thus "publicly disclosed (for the first time) [defendant's] identity and role in the conspiracy." Plaintiffs assert that defendant and BDO's fraudulent concealment extended up until that date. Plaintiffs therefore contend that the five-year limitations period of section 13-215 (735 ILCS 5/13-215 (West 2014) began to run on December 30, 2009, and their complaint in this case, filed exactly five years later on December 30, 2014, was therefore timely. The operative determination therefore is whether plaintiffs knew or should have known of their cause of action before December 30, 2009.

¶ 70    In order to prove fraudulent concealment, plaintiffs must show affirmative acts or representations by defendant that were "designed to prevent and, in fact, did prevent," plaintiffs from discovering their claims. *Gredell v. Wyeth Laboratories, Inc.*, 346 Ill. App. 3d 51, 60 (2004). "As a general rule, mere silence on the part of the defendant and a failure by the plaintiff to learn of the cause of action are not enough to establish fraudulent concealment." *Wisniewski*, 406 Ill. App. 3d at 1154  (citing *Kenroy*, 78 Ill. at 555, 561 (1980)). There is an exception to this general rule, however, where there is a fiduciary or other special relationship between the plaintiff and the defendant. *Id.* "[W]hen such a relationship exists, the person occupying the position of fiduciary or of confidence is under a duty to reveal the facts to the plaintiff, and his silence is as fraudulent as an actual affirmative false representation or act." *Id.* Stated another way, "[s]ilence by a person in a position of trust concerning the facts giving rise to a cause of action amounts to fraudulent concealment." *Id.* at 1155.

¶ 71 Courts will not apply fraudulent concealment to toll the statute of repose, however, where " 'the claimant discovers the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remains within the remaining limitations period.' " *Mauer v. Rubin*, 401 Ill. App. 3d 630, 649 (2010) (quoting *Smith v. Cook County Hospital*, 164 Ill. App. 3d 857, 862 (1987)). Accordingly, where the plaintiff has been put on "inquiry" as to a defendant's fraudulent concealment before the expiration of the limitations period, he cannot later use fraudulent concealment "as a shield in the event that he does not file suit within the statutory period." *Id.*

¶ 72 Accordingly, there are several operative dates for this court to consider in addressing this claim. Plaintiffs allege that BDO retained defendant in 2000, and had some interaction with BDO in 2002. Thus, the two-year statute of limitations would expire in 2004 at the latest, and the six-year statute of repose would expire in 2008. Thus, if plaintiffs knew or should have known of their cause of action or defendant's fraudulent concealment before 2008, fraudulent concealment would not serve to toll the limitations period because plaintiffs would have been put on inquiry about their claim and defendant's fraudulent concealment before the expiration of the limitations period.

¶ 73 In addition, we must also keep in mind the five-year limitations period of section 13-215. Plaintiffs alleged that they first learned of defendant's role in BDO's fraud and breach of fiduciary duty on December 30, 2009, and filed their complaint in this case exactly five years later. Thus, if plaintiffs knew or reasonably should have known before December 30, 2009, that BDO provided them with fraudulent tax advice and solutions despite BDO's affirmative misrepresentations or silence, but failed to inquire further in order to discover if they had a cause of action against BDO and defendant, who plaintiffs allege had been working with BDO on the conspiracy, then the five-year limitations period would begin to run on that date. Plaintiffs' claims would therefore be time-

barred despite the existence of any fraudulent concealment. Here, the record clearly shows that plaintiffs knew or should have known of BDO's fraud and alleged fraudulent concealment for years before BDO filed its suit against defendant on December 30, 2009.

¶ 74    A brief chronology of the events demonstrates that plaintiffs' claims cannot be salvaged simply by their allegations of fraudulent concealment. Plaintiffs entered into the Sentinel Transaction with BDO in 1999. In 2000, BDO executives contacted defendant to determine whether the use of the Sentinel Transaction exposed BDO to civil or criminal liability. Later that year, the IRS issued a notice concerning the use of illegal tax shelters, like the Sentinel Transaction. BDO executives assured plaintiffs that the notice had no legal impact and that the notice would not affect them. Plaintiffs then filed their tax returns through BDO claiming illegitimate losses through the use of the Sentinel Transaction. In 2002, the IRS began investigating BDO, and the plaintiffs were notified that their 1999 and 2000 tax returns were under audit by the IRS. During the next two years, multiple suits were filed against BDO for their tax practices, including a national class action. In October 2002, BDO sent letters to plaintiffs regarding the IRS's investigation of tax shelters, including the ones plaintiffs entered into, and the summons enforcement action the IRS had instigated against BDO in federal court. All plaintiffs hired or contacted independent legal counsel by 2003.

¶ 75    In December 2004, plaintiffs Tatro, Humenansky, and Cullinane settled with the IRS acknowledging that their 1999 tax shelters were illegitimate. Plaintiff Tatro testified at his deposition that he knew in December 2004 that he had gotten a "raw deal" and that BDO had wronged him. Plaintiff Cullinane testified that by December 2004, he knew the tax information BDO had provided to him was "not accurate," and at that time he wanted to investigate whether he had any reason to file suit. Plaintiff Filipowski testified that in 2003 he had "some suspicions,"

but he did not recall precisely when his "concerns grew exponentially," which may have happened in 2004, 2005, or 2006. Each plaintiff testified that they ceased to rely on BDO's advice by 2004 at the latest.

¶ 76     In 2004, plaintiffs entered into tolling agreements with BDO relating claims they may have had against BDO related to the tax shelter transactions plaintiffs had entered into in 1999. In 2005, plaintiffs Tatro, Humenansky, and Cullinane settled their claims against BDO as part of a nation-wide class action. In September 2005, the IRS issued notices of Final Partnership Administrative Adjustment (FPAA) to the plaintiffs. In the FPAAs, the IRS informed plaintiffs that it had determined that their partnerships created in association with their use of the Sentinel Transactions were "sham[s]," and were formed solely for the purpose of tax avoidance. Three plaintiffs filed petitions in tax court challenging the IRS's determination. Plaintiff Humenansky testified at his deposition that he was considering legal action against BDO in 2005, after settling with the IRS. Plaintiff Freedman testified that in May 2005 he discussed with plaintiffs Cullinane and Tatro their potential recourse against BDO. Plaintiff Wright, who settled with the IRS in July 2007, testified at his deposition that it was his belief in May 2008 that BDO had marketed illegal tax shelters to him in 1999 and 2000. From 2005 through 2009, the plaintiffs discussed among themselves whether to file suit against BDO. In June 2009, multiple BDO executives were indicted for their role in a fraudulent tax scheme. On December 30, 2009, BDO filed suit against defendant.

¶ 77     Although there is some variation among the plaintiffs regarding when and whether they settled their claims with BDO and the IRS, one thing is true of all plaintiffs, and that is that they knew or should have known of any alleged fraudulent concealment and their cause of action well before December 30, 2009. Plaintiffs knew that BDO had provided them with fraudulent tax advice in 2004, and were aware by 2005 that the IRS considered their tax transactions shams. Plaintiffs

were considering filing suit against BDO in 2004 and 2005. Multiple BDO executives were indicted in June 2009, six months before BDO filed suit against defendant. Although plaintiffs may not have known all of the facts giving rise to their cause of action against defendant in 2004 or 2005, the record shows that at this point plaintiffs had sufficient information such that they reasonably should have discovered the alleged concealment through the exercise of ordinary diligence. See *Turner v. Nama*, 294 Ill. App. 3d 19, 28 (1997) (holding that if the plaintiff should have discovered the fraudulent concealment through due diligence and a reasonable time remains within the limitations period, the fraudulent concealment exception cannot be invoked). At a minimum, plaintiffs knew or should have known at this point that the assurances BDO had made to them in the early 2000s that their tax shelter transactions were legitimate were false. Thus, even assuming the fraudulent concealment statute applies here, plaintiffs knew or should have known of their claims at the latest in 2005 or 2006. The five-year statute of repose would therefore have expired in 2011, three years before plaintiffs filed suit. Even giving plaintiffs the extreme benefit of the doubt that they could not have known of BDO's fraudulent conduct until BDO executives were indicted in June 2009, their complaint, filed in December 2014, was still filed outside of the five-year limitations period of section 13-215.

¶ 78     We find plaintiffs' reliance on *DeLuna*, 223 Ill. 2d 49 unpersuasive. In *DeLuna*, the plaintiffs retained an attorney to pursue medical malpractice claims. *Id.* at 54. The plaintiffs did not speak English and relied on their Spanish-speaking attorney for updates about their lawsuit. *Id.* at 54-55. Without informing the plaintiffs, the attorney deliberately did not attach a necessary affidavit to the complaint because he wanted to challenge the constitutionality of the affidavit requirement. *Id.* at 54. The suit was eventually dismissed with prejudice based on the attorney's failure to attach the affidavit. *Id.*

¶ 79    The dismissal was reversed on appeal, but upheld by the supreme court who affirmed the constitutionality of the affidavit requirement and the dismissal of the plaintiffs' action. *Id.* at 55. After the supreme court's ruling, and as the deadline for the statute of repose for medical malpractice actions approached, the attorney met with the plaintiffs and assured them that the medical malpractice case was going well. *Id.* The attorney then re-filed the case, this time attaching the necessary affidavit, the action against the doctor was dismissed on the basis of res judicata, and the supreme court affirmed that judgment on appeal. *Id.* The plaintiffs later settled with the hospital. *Id.* The plaintiffs then filed a legal malpractice action against the attorney, but the attorney moved to dismiss on the basis that the statute of limitations for filing the legal malpractice suit based on his conduct nearly 10 years prior had expired. *Id.* at 55-56.

¶ 80    On appeal to the supreme court, the court found that the plaintiffs' allegations were sufficient to establish the attorney's fraudulent concealment of facts supporting their legal malpractice cause of action. *Id.* at 81. The court found that the attorney made continued reassurances to the plaintiffs that there was no need for them to inquire further about their case, and plaintiffs alleged that they relied on that representation. *Id.* The court also found that because the plaintiffs could not speak English, they were not "required to conduct their own courthouse investigation" and were "even less qualified than 'most clients *** to undertake that type of monitoring.' " *Id.* at 81-82 (quoting *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 17 (2004)). The court further determined that based on the attorney's assurances, the plaintiffs had no reason to think that such investigation was necessary. *Id.* at 82. The court therefore found that the plaintiffs had adequately pled fraudulent concealment to extend the limitations period for their legal malpractice claim. *Id.*

¶ 81    Here, in contrast to *DeLuna*, plaintiffs cannot claim that they relied on BDO or defendant's representations in delaying in filing their suit until well after the statute of limitations and statute of repose expired. By plaintiffs' own admissions, they ceased relying on BDO's advice in 2004 or 2005, and knew, at that time, that BDO had wronged them in some manner. BDO even entered in settlement agreements with some of the plaintiffs. It was at that point that plaintiffs' duty to conduct ordinary diligence and investigate further began. This was not a situation, like *DeLuna*, where plaintiffs were incapable of conducting further investigation because of a language barrier or similar limitation. Indeed, each plaintiff acknowledged that they were represented by or consulted with various attorneys in the early 2000s with regard to possible claims they could have against BDO and in relation to the ongoing IRS investigation. Thus, as discussed, to the extent that any fraudulent concealment occurred, the fraudulent concealment ceased in 2005 or 2006 when defendants stopped relying on BDO's representations and were on inquiry notice that BDO had fraudulent concealed their cause of action and that they had a cause of action against BDO.

¶ 82                                    1. *Defendant's Identity*

¶ 83    Plaintiffs nonetheless contend that section 13-215 should serve to toll their claims against defendant because they were not aware of defendant's identity until BDO filed suit against defendant in December 2009. This argument, however, misunderstands the standard for fraudulent concealment. For one, plaintiffs do not allege that either BDO or defendant took any action to affirmatively prevent plaintiffs from discovering defendant's identity. Nor do they assert that BDO breached its fiduciary duty by failing to inform plaintiffs of defendant's identity. Secondly, the concern with fraudulent concealment is not plaintiffs' knowledge of a particular defendant, but plaintiffs' knowledge of a cause of action.

¶ 84    As the circuit court recognized, "Illinois courts have consistently interpreted section 13-215 to apply only to fraudulent concealment of causes of action," and not the identity of the defendant. *Levine v. EBI, LLC*, 2013 IL App (1st) 121049, ¶ 21 (citing *Pratt*, 71 Ill. App. 3d at 830); *Guebard v. Jabaay*, 65 Ill. App. 3d 255, 260 (1978) (" '[u]nder the Limitations Act, the only concealment which postpones the running of the statute of limitations is fraudulent concealment by the defendant of the cause of action[;] *** [c]oncealment of the identity of a party liable is not deemed the same' "). Therefore, where the plaintiff's cause of action is not concealed, but the identity of the tortfeasor is concealed, section 13-215 does not apply to allow the plaintiff an extension of the limitations period for filling his claim. *Id.* Plaintiffs maintain that they did not know of their cause of action in 2005 or 2006 due to defendant's fraudulent concealment, but only knew that they had received incorrect tax advice from BDO, and that the IRS was challenging their transactions. As noted, however, even though plaintiffs may not have known of their cause of action that this time—although plaintiffs' deposition testimony and other contemporaneous actions suggest that they may have—all that is necessary to defeat a claim of fraudulent concealment is to show that plaintiffs were on inquiry such that they reasonably should have discovered their cause of action or the fraudulent concealment through the exercise of ordinary diligence. *Mauer*, 401 Ill. App. 3d at 649. In this case, the record shows that plaintiffs were on inquiry notice in 2004 or 2005 and therefore had the responsibility to investigate further. They cannot now use fraudulent concealment as a "shield" where they failed to file suit within the statutory period. *Id.*

¶ 85    Plaintiffs finally contend that we should apply fraudulent concealment to toll the limitations period where defendant's identity was "unknowable" before December 30, 2009, when BDO filed suit against defendant. Relatedly, plaintiffs assert that although they may have been aware of their cause of action against BDO, they could not have known about their cause of action

against defendant, who was unknown to them at the time. In support of these contentions, plaintiffs rely on *Doe v. Boy Scouts of America*, 2016 IL App (1st) 152406 and *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 31. We find both cases distinguishable from the case at bar.

¶ 86    In *Doe*, a former Boy Scout joined an existing lawsuit against his former scoutmaster and the Boy Scouts of America ("BSA") alleging that he had been sexually abused by his scoutmaster.[2] *Doe*, 2016 IL App (1st) 152406, ¶ 1. The plaintiff alleged that the BSA knew that the scoutmaster had sexually abused Boy Scouts before his abuse of the plaintiff, but they nevertheless allowed the scoutmaster to continue to serve as the scoutmaster for the plaintiff's troop. *Id.* ¶ 2. The BSA moved for summary judgment on the basis that the plaintiff's claim was time barred by the applicable statute of limitations. *Id.* ¶ 3. In response, the plaintiff argued that his claim was timely filed under the fraudulent concealment statute (735 ILCS 13-215 (West 2012)), where the BSA had concealed their knowledge of the scoutmaster's conduct, thereby concealing their liability for the scoutmaster's actions. *Id.* The trial court denied the defendants' motion for summary judgment, but certified a question for interlocutory review to the appellate court. *Id.* The question was:

> "Does the fraudulent-concealment statute of limitations permit a plaintiff to maintain an otherwise time-barred action for child sexual abuse when he testifies that he knew, before the action was time-barred, that he had sustained a physical injury from the abuser's conduct and that the abuser had been arrested and tried for similar crimes?" (Internal quotation marks omitted) *Id.* ¶ 4.

¶ 87    This court answered the question in the affirmative finding if the defendants were in a special relationship with the plaintiff, a jury could find that their silence amounted to fraudulent

---

[2]The scoutmaster was eventually voluntarily dismissed from the lawsuit. *Doe*, 2016 IL App (1st) 152406, ¶ 1.

concealment. *Id.* ¶¶ 7, 96. The court held that there was therefore a question of fact regarding whether or not the defendants fraudulently concealed the plaintiff's cause of action. *Id.* ¶ 97. As in the case at bar, the defendants in *Doe* argued that the plaintiff could not invoke fraudulent concealment because he knew or should have known of his cause of action when the abuse began, and before the limitations period expired. *Id.* ¶ 104. The court rejected defendant's argument finding that merely because the plaintiff was aware of the scoutmaster's wrongful conduct, that did not mean that he was also on notice of the BSA's negligence, especially where the plaintiff alleged that he did not discover this cause of action because the BSA was fraudulently concealing the facts giving rise to it. *Id.* ¶ 109. The court observed that the BSA fraudulently concealed the cause of action going so far as to publicly disclaim knowledge of the scoutmaster's conduct, despite the fact that it had knowledge of the scoutmaster's abuse for years. *Id.* ¶ 102. The court found that the plaintiff had a "legitimate basis" for believing that the BSA did not know about the scoutmaster's history of abuse. *Id.* The court therefore held that the plaintiff was thus not on notice of all facts relevant to his cause of action within the limitations period. *Id.* ¶ 111.

¶ 88    Plaintiffs contend that like the plaintiff in *Doe*, although they may have been aware of their injury, and one party who was liable for their injury, BDO, they were not aware of another potentially liable party, defendant, until after the limitations period expired. Here, however, unlike in *Doe*, defendant did not make any affirmative representations to plaintiff in an effort to conceal its knowledge of BDO's criminal conduct from plaintiffs. To the contrary, plaintiffs acknowledged that they had limited, if any, contact with defendant at all. Furthermore, there can be no question here, unlike in *Doe*, that no special relationship existed between defendant and plaintiffs that would require defendant to speak. Moreover, the decision in *Doe* was based in part on the BSA's "unique

position of superiority and influence" over its youth members, like the plaintiff. *Id.* ¶ 92. Defendant was not in a similar position with respect to plaintiffs in this case.

¶ 89    We find *Mitsias*, 2011 IL App (1st) 101126 distinguishable for similar reasons. In *Mitsias*, the plaintiff underwent shoulder surgery in 2001, and her doctor installed a pain pump in her shoulder. *Id.* ¶ 6. Following surgery, the plaintiff experienced severe pain and reduced range of motion in her shoulder. *Id.* In October 2003, the plaintiff filed her initial complaint against the doctor and the hospital alleging claims of negligence and *respondeat superior*. *Id.* ¶ 7. During discovery, the plaintiff learned that the pain pump that had been inserted in her shoulder had been known to cause the type of injuries the plaintiff had suffered. *Id.* ¶¶ 8-9. This information was not known at the time the plaintiff's pain pump was inserted in 2001, but was discovered years later in 2007.

¶ 90    The plaintiff subsequently voluntarily dismissed her initial suit, and in February 2009 filed a products liability action against the manufacturer of the pain pump, as well as re-alleging her medical malpractice claims against her doctor. *Id.* ¶ 10. The products liability defendants moved to dismiss the plaintiff's claims against them as time barred by the two-year limitations period of section 13-213(d) of the Code (735 ILCS 5/13-213(d) (West 2008)). The trial court granted the products liability defendants' motion to dismiss. *Id.* ¶ 15.

¶ 91    On appeal, this court framed the central issue as "how the discovery rule is applied when a plaintiff is aware that her injury might have been wrongfully caused by one source but is unaware that her injury might have been caused by another source and, in fact, could not be aware of that source because the causal link was as yet unknown to science." *Id.* ¶ 19. The court found that the discovery rule should serve to toll the plaintiff's claims because the plaintiff filed a timely medical malpractice action, and the only reason she delayed in filing the products liability suit was not "due

to any lack of diligence on her part but, rather, to the fact that the scientific community was not aware of the dangers associated with pain pumps until the summer of 2007." *Id.* ¶ 29. The court concluded that "where a plaintiff knows or should reasonably know that her injury was caused by one source, but remains unaware of another source that could not be discovered through the exercise of diligent inquiry, the statute of limitations does not begin to run with regard to that second source until such time as that second source would become discoverable through diligent inquiry." *Id.* ¶ 31.

¶ 92    Plaintiffs maintain that like the plaintiff in *Mitsias*, one source of their injury may have been discoverable within the limitations period, but defendant's identity and role in causing their injury was not knowable. We first observe that *Mitsias* is a discovery rule case, rather than a fraudulent concealment case, so its applicability in this case is questionable. Nonetheless, *Mitsias* represents a unique set of circumstances where the plaintiff was unable to discover the second source of her injury within the limitations period because the cause was "unknown to science." *Id.* ¶¶ 19, 43. Therefore the plaintiff could not have discovered the second source of her injuries regardless of the amount of diligence she employed; it was simply unknowable. *Mitsias* thus goes beyond cases where the defendant's identity was simply unknown to the plaintiff, but was for all practical purposes, unknowable.

¶ 93    Defendant's identity in this case was not similarly unknowable before the limitations period expired. Rather, we find the circumstances in this case more akin to those present in *Wells v. Travis*, 284 Ill. App. 3d 282 (1996). In that case, the plaintiff sued the defendant doctor for medical malpractice. *Id.* at 284. The plaintiff subsequently filed an amended complaint adding a second doctor to the lawsuit. *Id.* The second doctor filed a motion to dismiss the claims against her in the complaint contending that the plaintiff's claims were barred by the statute of limitations. *Id.*

¶ 94 On appeal to the supreme court, the plaintiff argued that she had no knowledge of the second doctor's alleged malpractice until she began discovery on her initial malpractice suit. *Id.* at 286. The court distilled plaintiff's argument as "a person is not charged with knowledge sufficient to trigger the running of the limitations period as to any particular defendant until the person knows or reasonably should know that the injury was wrongfully caused by the negligence *of that defendant.*" (Emphasis in original.) *Id.* at 287. The court stated that it "expressly disavowed" that interpretation of the discovery rule, holding instead that the statute of limitations begins to run when " 'the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.' " *Id.* (quoting *Knox College v. Celotax Corp.*, 88 Ill. 2d 407, 416 (1981)). The court continued that at that point the burden is on the injured party to inquire further as to the existence of a cause. *Id.* Following *Wells*, this court has routinely held that where a plaintiff is aware that their injury may be wrongfully caused, the limitations period begins to run and the plaintiff's responsibility to conduct a reasonable inquiry into the cause of the injury begins, even if the plaintiff is not aware of a specific defendant's tortious act. See, *e.g.*, *Castello v. Kalis*, 352 Ill. App. 3d 736, 749 (2004) ("Like the plaintiff in *Wells*, the essence of plaintiff's position here is that [the plaintiff] should not have been charged with knowledge sufficient to trigger the running of the limitations period as to any particular defendant until she knew or reasonably should have known that her injury was caused by *that defendant*. As stated in *Wells*, our supreme court has expressly disavowed any such interpretation of the discovery rule." (Emphasis in original.)); *Hoffman v. Orthopedic Systems, Inc.*, 327 Ill. App. 3d 1004, 1011 (2002) ("Although [the plaintiff's] suspicion of wrongful causation was limited to an investigation as to whether medical malpractice was committed, rather than whether a product liability action existed, *** the term 'wrongfully

caused,' does not mean knowledge by a plaintiff of a specific defendant's negligent act. ****
Plaintiff's failure to pursue a more thorough inquiry to find the cause of her injuries does not
excuse her from failing to comply with the statute of limitations.").

¶ 95     In sum, plaintiffs here had ample notice of their injury in 2004 or 2005. At the very least,
they had sufficient information at that time to exercise ordinary diligence such that they reasonably
should have discovered the alleged fraudulent concealment. Accordingly, the limitations period
began to run at that point. This case does not present the same unique circumstances that were
present in *Mitsias*, but rather follows the traditional rule that the limitations period is not tolled
simply because plaintiffs were not aware of a specific defendant's alleged tortious conduct. Simply
because defendant's identity was unknown to plaintiffs at the time does not mean that defendant's
identity was "unknowable" or that plaintiffs were somehow excused from their responsibility to
exercise ordinary diligence. Therefore, the fact that defendant's identity was unknown to plaintiffs
within the limitations period is irrelevant under section 13-215. Accordingly, section 13-215
cannot serve to extend the time for plaintiffs to file this cause of action until December 2014. We
therefore affirm the circuit court's entry of summary judgment in favor of defendant.[3]

---

[3]We observe that plaintiffs attached to their reply brief a decision from the Florida District Court
of Appeal in a case involving allegations against defendant that are similar to the allegations plaintiffs
raise in this case. See *Kent Logan & Lance Logan v. Morgan, Lewis & Bockius LLP, BDO Seidman, LLP,
and AIG International, Inc.*, No. 2D21-337, 2022 WL 12100591 (Fla. 2d DCA 2022). However, that
appeal arose from the trial court's grant of defendant's motion to dismiss the plaintiffs' complaint. On
appeal, therefore, the court solely considered whether the allegations in the complaint were sufficient to
survive the motion to dismiss. The court's review was therefore limited to the "four corners" of the
plaintiffs' complaint. *Id.* at 3.  Here, in contrast, this appeal concerns the circuit court's grant of summary
judgment. We therefore have the benefit of affidavits, depositions, and hundreds of exhibits in
determining whether defendant is entitled to judgment as a matter of law, not whether plaintiffs'
complaint adequately stated a cause of action. The Florida District Court of Appeals also expressly did
not address the statute of limitations or statute of repose noting that those were affirmative defenses. *Id.* at
7. Notably, the circuit court in the case at bar denied defendant's motion to dismiss the complaint,
rejecting many of the same arguments addressed by the Florida District Court of Appeal. We therefore

¶ 96    Because we affirm the circuit court's ruling on the basis that plaintiffs' claims are time-barred, we need not address defendant's alternate theories of affirmance, including that plaintiffs' claims are barred by their settlement agreements with BDO and that plaintiffs' claims are barred by the doctrine of *in pari delicto*.

¶ 97                               III. CONCLUSION

¶ 98    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 99    Affirmed.

_____

find no discrepancies between the decision in this case and the judgment of the Florida District Court of Appeal in *Logan*.